UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 16-CR-84 (WMW)

UNITED STATES OF AMERICA,

        Plaintiff,         **GOVERNMENT'S POSITION WITH RESPECT TO SENTENCING**

    v.

DIANE L. KROUPA,

        Defendant.

The United States of America, by and through its attorneys Gregory G. Brooker, Acting United States Attorney for the District of Minnesota, and Assistant United States Attorneys Timothy C. Rank and Benjamin Langner, submits this memorandum setting forth its position with respect to sentencing factors in this matter. The United States anticipates filing a supplemental sentencing memorandum pursuant to Local Rule 83.10 one week before the sentencing hearing in this matter.

### I.    The PSR

The United States agrees with the factual statement set forth in the Presentence Investigation Report ("PSR"). In addition, the United States agrees with the sentencing guidelines calculations contained in the PSR, which are in accord with the calculations of the plea agreement. As reflected in the PSR, the appropriate guidelines range for Ms. Kroupa's offense is 30-37 months in prison.

II.     **Factual Background**

Diane Kroupa and her husband, Robert Fackler, filed their federal U.S. income tax returns with the Internal Revenue Service ("IRS") under the designation "Married Filing Jointly" until the 2011 tax year.

From 2003 until June 2014, Kroupa was employed as a United States Tax Court Judge.  As a Tax Court Judge, Kroupa heard and decided cases involving tax law issues, including what is required to be reported as income and what constitutes proper business deductions.  Kroupa's chambers were located in Washington, D.C.

During this time, Fackler was a self-employed lobbyist and political consultant. Fackler owned and operated a Schedule C entity known as Grassroots Consulting, the income of which was included as part of Kroupa and Fackler's joint tax returns for tax years 2004-2010.  Through Grassroots Consulting, Fackler provided lobbying and consulting services to three primary clients.  Fackler's clients paid him as an independent contractor and reported the payments to Fackler and the IRS via Form 1099.  Fackler was typically reimbursed by clients for meals, travel, and other expenses incurred in connection with services provided to clients.

For most of the time between 2004 and 2013, Kroupa and Fackler were residents of Minnesota.  From 2004 to 2013, Kroupa and Fackler owned a house in Plymouth, Minnesota (the "Plymouth Residence").  In addition, from about July 2007 until about August 2013, Kroupa and Fackler leased a second residence, a house in Easton, Maryland (the "Easton Residence").  Kroupa lived at the Easton Residence while fulfilling her duties as a Tax Court Judge in Washington.

**Conspiracy to Evade the Ascertainment
and Computation of Income Taxes**

Beginning no later than in or about 2002 and continuing through 2012, Kroupa and Fackler Robert Fackler, to impede, impair, and obstruct the Internal Revenue Service from correctly ascertaining and computing their joint income taxes.

*Deduction of Personal Expenses as Business Expenses*

In or about 2002, Kroupa and Fackler began jointly inflating the purported "business" expenses deducted by Grassroots Consulting in order to reduce the income claimed by Grassroots Consulting and, by extension, Kroupa and Fackler on their yearly tax returns. Each year, Fackler collected numerous personal expenses paid through his credit cards and Grassroots Consulting's bank account, and included them along with his legitimate business deductions on a spreadsheet that purported to summarize his Schedule C business expenses. Kroupa collected additional personal expenses from their joint bank account, and included them, or caused them to be included, with the expenses Fackler compiled. Kroupa and Fackler then input the total expense figures—which they both knew included numerous personal expenses—onto a tax organizer that they provided to their tax preparer. Neither Kroupa nor Fackler revealed to the tax preparer that the amounts reflected in the spreadsheet and tax organizer included personal expenses disguised as business expenses, which increased Grassroots Consulting's business expenses and reduced the amount of taxes they jointly owed to the IRS.

Each year from 2003 through 2011, Kroupa and Fackler falsely reported a significant amount of personal expenses disguised as Grassroots Consulting business

3

deductions. For example, Kroupa and Fackler fraudulently claimed the following personal expenses as Schedule C business expenses associated with the operation of Grassroots Consulting:

    a.    Various personal expenses associated with the Easton Residence including rent, utilities, Internet/cable service, garbage removal, and household cleaning;

    b.    Various personal expenses associated with the Plymouth Residence including household cleaning, bathroom remodeling, new windows, interior design fees, home repair, decorating, house painting, landscaping, plumbing repairs, washer/dryer, dishwasher, garbage removal, and Internet/cable service;

    c.    Personal expenses incurred for use of furniture to "stage" the Plymouth Residence when the defendants attempted to sell the house;

    d.    Limousine and taxi fees for travel by Kroupa for Tax Court business; and

    e.    Other personal expenses incurred by or on behalf of Kroupa, Fackler, and/or their family members, such as:

        i.    Pilates classes;
        ii.    Spa and massage fees;
        iii.    Jewelry and personal clothing;
        iv.    Wine club fees and purchases at wineries;
        v.    Airfare, hotel, and other expenses for vacations to, among other locations:

            (1)    Alaska;
            (2)    Australia;
            (3)    Bahamas;
            (4)    China;
            (5)    England;
            (6)    Greece;
            (7)    Hawaii;
            (8)    Mexico; and
            (9)    Thailand;

        vi.    Chinese tutoring;
        vii.    Music lessons;
        viii.    Personal computers;

    ix.  Family and graduation photos;
    x.  Christmas cards;
    xi.  Household items;
    xii.  Groceries;
    xiii.  Dry cleaning and laundry; and
    xiv.  Personal cellular telephone charges.

  In total, from 2004 through 2010, Kroupa and Fackler fraudulently deducted at least $500,000 of personal expenses as purported Schedule C business expenses. As a result, the defendants caused the amount of adjusted gross income, taxable income, and total tax shown on their income tax returns to be falsely and significantly understated.

### *Deduction of Personal Expenses as Unreimbursed Employee Expenses*

  As part of the conspiracy, Kroupa falsely reported certain personal expenses as "Unreimbursed Employee Expenses" incurred in connection with her employment as a United States Tax Court Judge. For example, Kroupa fraudulently claimed the following personal expenses as Unreimbursed Employee Expenses:

   a.  Personal grooming services for family members;
   b.  "Nantucket" bags for herself and other family members;
   c.  Purchases at Barnes & Noble for family members;
   d.  Various personal meals; and
   e.  Household decorations.

As a result, Kroupa caused and attempted to cause the amount of taxable income and total tax shown on certain of their tax returns to be falsely understated.

### *Unreported Income from South Dakota Land Sale*

  As part of the conspiracy, Kroupa purposely failed to report approximately $44,520 that she received in 2010 in connection with the sale of a parcel of real estate located in

5

South Dakota. As a result, Kroupa caused the amount of adjusted gross income, taxable income, and total tax shown on their income tax returns to be falsely understated.

*Cancellation of Indebtedness Income*

As part of the conspiracy, Kroupa falsely claimed that approximately $33,031 of cancellation of indebtedness income that she and Fackler received from Bank of America in 2008 was not taxable because they were financially insolvent. In fact, they had substantial assets that exceeded their liabilities, including retirement accounts, property, and investment accounts, rendering them solvent within the meaning of the tax code. Kroupa purposely avoided calculating her and Fackler's true net worth, which would have shown that they were not insolvent. As a result, Kroupa caused the amount of adjusted gross income, taxable income, and total tax shown on their 2008 income tax returns to be falsely understated.

**False and Misleading Representations During 2006 Audit**

In 2006, Kroupa and Fackler were audited for tax years 2004 and 2005. In connection with that audit, they caused false and misleading representations to be made to the IRS Tax Compliance Officer who was conducting the audit. Specifically, in response to inquiries and requests for documentation relating to Grassroots Consulting's business deductions, Fackler caused their tax preparer to represent to the IRS Tax Compliance Officer that many of the expenses claimed on their tax returns were legitimate business deductions but Fackler kept poor records. These representations were false – the expenses were personal in nature – although the tax preparer was unaware of this fact. Rather than provide the documents requested by the Tax Compliance Officer, which would have shown

6

that the deductions were fraudulent, Fackler concealed the records from both the tax preparer and the Tax Compliance Officer, telling both that they had failed to keep records related to the claimed expenses. Kroupa knew that she and Fackler had deducted personal expenses as purported business expenses, and knew that in order to conceal this Fackler would necessarily provide false information to the IRS Tax Compliance Officer conducting the audit. At the conclusion of the 2006 audit, Fackler and Kroupa acknowledged tax deficiencies in the amount of approximately $48,000 (including interest and penalties) and they were issued an "Inadequate Records Notice" by the IRS informing the defendants that they had not been keeping adequate records of their business expenses.

**Obstruction and False Representations During 2012 Audit**

Kroupa and Fackler were audited again in 2012 for the tax years 2009 and 2010. In connection with that audit, Kroupa and Fackler caused false and misleading representations to be made, and caused false and misleading documents to be delivered, to the IRS Revenue Agent conducting the audit. Specifically, after learning of the audit and the IRS Revenue Agent's requests for documents pertaining to their tax returns, Kroupa and Fackler reviewed their tax files, and removed certain items requested by the Revenue Agent from the tax files because they could reveal the fact that Kroupa and Fackler had inappropriately deducted numerous personal expenses. Fackler (with Kroupa's knowledge) then provided to their tax preparer, knowing that he would then provide to the IRS Revenue Agent, typed and handwritten documents purporting to summarize business expenses incurred by Grassroots Consulting that were, in fact and as they knew, personal expenses incurred by Kroupa and Fackler, and their family members.

During the audit, in response to an inquiry from an IRS Revenue Agent regarding a deposit into her bank account in the amount of approximately $44,520 in July 2010, Kroupa sent an email to their tax preparer falsely and misleadingly informing the tax preparer that the deposit was part of an unrelated inheritance and not income received as part of a land sale by Kroupa in South Dakota.

When Kroupa and Fackler learned that the 2012 audit might progress into a criminal investigation, Kroupa repeatedly told Fackler to maintain, falsely, that he did his taxes and she did hers. Believing that the investigation would focus solely on the false business deductions taken by Fackler's company, Grassroots Consulting, Kroupa told Fackler to tell investigating authorities, falsely, that Kroupa had no role in organizing or preparing the Grassroots Consulting portion of their joint tax return.

## Total Tax Loss

Each tax year from 2004 through 2010, Kroupa and Fackler provided false information to their tax preparer and caused false tax returns that significantly understated their adjusted gross income, taxable income, and total tax to be filed with the Internal Revenue Service. Kroupa and Fackler purposely understated their taxable income by approximately $1,000,000 and purposely understated the amount of tax they owed by approximately $450,000 as follows:

| Year | Federal Tax Loss | State Tax Loss |
|------|------------------|----------------|
| 2004 | $ 48,754.00 | $ 4,184.00 |
| 2005 | $ 55,380.00 | $ 5,144.00 |
| 2006 | $ 48,160.00 | $ 7,550.00 |
| 2007 | $ 75,648.00 | $ 7,276.00 |
| 2008 | $ 79,989.00 | $ 5,840.00 |
| 2009 | $ 74,769.00 | $ 14,037.00 |

| 2010 | $ 72,557.00 | $ 13,753.00 |
|---|---|---|
| **Total** | **$ 455,257.00** | **$ 57,784.00** |

**III.     The Appropriate Sentence in Light of 18 U.S.C. § 3553(a)**

Over a nearly ten-year period, Ms. Kroupa and her husband conspired to defraud the United States Treasury out of hundreds of thousands of dollars of taxes they knew they owed. Their fraud was not a momentary lapse of judgment. It was a lifestyle choice. Ms. Kroupa and Mr. Fackler had no pressing financial need that drove their conduct. They made a very comfortable living, more than $300,000 a year between them, which included Ms. Kroupa's $170,000 salary as a US Tax Court Judge. They stole money from the United States to maintain spending habits that went for luxuries, not necessities, including multiple vacation trips to places around the world, expensive clothing, and jewelry. Ms. Kroupa's crime is particularly egregious because of her position as a US Tax Court Judge and, before that, a Minnesota State Tax Court Judge. Ms. Kroupa held a special position of public trust. She understood how her brazen, multi-year tax fraud was a fundamental betrayal of that trust. She knew precisely what she was doing, she knew that her actions were criminal, and she used her knowledge of the tax laws and her position as a Tax Court Judge to aid her fraud or to chill those, like her tax preparer, who might have otherwise challenged claims that formed the basis of the fraud.

Ms. Kroupa had many opportunities to change her course of conduct. Indeed, when she and her husband were audited in 2006, she could have seen that as a wake-up call. She did not. Instead, Ms. Kroupa continued to commit tax fraud, but used her knowledge of the tax laws to spread out the fake deductions in a way that she believed would be less

9

detectable by the IRS.  Similarly, in 2012, when she and her husband were audited again, Kroupa's first response was to provide false information to the IRS Revenue Agent.  Later, when it appeared that the case was being investigated for possible criminal charges, Kroupa coached Fackler to create a story that would falsely exculpate her.  For at least 10 years, Ms. Kroupa made choices – choices to commit, and also to conceal, significant crimes against the United States.  For at least 10 years, each year, Kroupa to violate her oath as a lawyer and a judge, to cheat the taxpayers of the United States and the State of Minnesota, and to place her own greed above her obligation to obey the law.

The United States asks that this Court impose a sentence that takes into consideration all aspects of the defendant and her conduct in this case, as well as the sentencing guidelines, to arrive at a sentence that reflects an appropriate balance of the factors under 18 U.S.C. § 3553(a).  The government will make a specific sentencing recommendation in its supplemental sentencing memorandum, after having an opportunity to review the defendants' position pleadings and anything submitted in advance of sentencing.

Dated: June 9, 2017

Respectfully submitted,

GREGORY G. BROOKER
Acting United States Attorney

s/ *Timothy C. Rank*

BY: TIMOTHY C. RANK
Assistant U.S. Attorney